**No. _____**

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

*In re* DESOTO COUNTY, MISSISSIPPI, *et al.*,

*Petitioners*

On Petition for Writ of Mandamus to the
United States District Court for the
Northern District of Mississippi, Oxford Division
Civil Action No. 3:24-CV-289-GHD-RP

## EMERGENCY
## PETITION FOR WRIT OF MANDAMUS

D. Michael Hurst, Jr.
W. Thomas Siler, Jr.
Nicholas F. Morisani
Nash E. Gilmore
Sonya C. Dickson
PHELPS DUNBAR LLP
1905 Community Bank Way
Suite 200
Flowood, MS 39232
(p) 601-352-2300
(f) 601-360-9777

Mark N. Halbert
Andrew W. Coffman
PHELPS DUNBAR LLP
105 E. Main Street
Suite 201
Tupelo, MS 38804
(p) 662-842-7907
(f) 662-842-3873

*Counsel for Petitioners*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following persons and entities described in Rule 28.2.1 have an interest in the outcome of this petition in order that the judges of this Court may evaluate possible disqualification or recusal.

1. DeSoto County, Mississippi, DeSoto County Board of Supervisors, and DeSoto County Election Commission, Petitioners;

2. Phelps Dunbar LLP, D. Michael Hurst, Jr., W. Thomas Siler, Jr., Nicholas F. Morisani, Mark N. Halbert, Andrew W. Coffman, Nash E. Gilmore, and Sonya C. Dickson, counsel for Petitioners;

3. Harold Harris, Pastor Robert Tipton, Delta Sigma Theta Sorority, Inc., and DeSoto County MS NAACP 5574, Respondents;

4. ACLU of Mississippi and Joshua Tom, counsel for Respondents;

5. NAACP Legal Defense and Educational Fund, Inc., Brenda Wright, Victor Genecin, Breanna Williams, Jory Burks, Victor Jones, and Pilar Whitaker, counsel for Respondents;

6. Election Law Clinic at Harvard Law School, Daniel J. Hessel, and Ruth Greenwood, counsel for Respondents;

7. Badat Legal PLLC and Amir Badat, counsel for Respondents;

8. Judge Glen H. Davidson, U.S. District Court for the Northern District of Mississippi; and

9. Magistrate Judge Roy Percy, U.S. District Court for the Northern District of Mississippi.

SO CERTIFIED, this the 13th day of January 2026.

*/s/ D. Michael Hurst, Jr.*

D. Michael Hurst, Jr.
PHELPS DUNBAR LLP
1905 Community Bank Way, Ste. 200
Flowood, MS 39232
601-352-2300 (t); 601-360-9777 (f)
mike.hurst@phelps.com

*Counsel for Petitioners*

i

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................ i

TABLE OF AUTHORITIES .................................................................1

ISSUES PRESENTED...................................................................4

STATEMENT OF THE CASE...................................................................4

    I.    The Relevant Background ..........................................................5

    II.    The District Court's Decisions ................................................7

SUMMARY OF THE ARGUMENT ..................................................10

LEGAL STANDARD..........................................................................11

ARGUMENT ......................................................................................12

    I.    A Writ of Mandamus Is the Only Means by Which Petitioners May Obtain Relief..........................................................14

    II.    Petitioners Are Entitled to a Stay Pending the Supreme Court's Decision Where the District Court has Unreasonably Raced Toward Trial on a Truncated Schedule During the Pendency of *Callais*. ..............................15

    III.    A Writ of Mandamus Is Appropriate Under the Circumstances..............19

CONCLUSION .....................................................................................21

CERTIFICATE OF COMPLIANCE.......................................................23

CERTIFICATE OF SERVICE ..............................................................24

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ala. State Conf. of NAACP v. State*,
    264 F. Supp. 3d 1280 (M.D. Ala. 2017).............................................................13

*Cheney v. U.S. Dist. Court for D.C.*,
    542 U.S. 367 (2004)..................................................................................12

*Clark v. Edwards*,
    No. 3:86-cv-435 (M.D. La. July 17, 2025)..........................................................4

*Connor v. Finch*,
    431 U.S. 407 (1977)..................................................................................18

*Elizondo v. Spring Branch Indep. Sch. Dist.*,
    2025 WL 2664245 (S.D. Tex. Sept. 17, 2025).......................................................4

*Grace v. Vannoy*,
    826 F.3d 813 (5th Cir. 2016) .......................................................................14

*Highmark Inc. v. Allcare Health Management Sys., Inc.*,
    572 U.S. 559 (2014)..................................................................................16

*In re First S. Sav. Ass'n*,
    820 F.2d 700 (5th Cir. 1987) .......................................................................15

*In re Gee*,
    941 F.3d 153 (5th Cir. 2019) ...........................................................11, 12, 15

*In re JPMorgan Chase & Co.*,
    916 F.3d 494 (5th Cir. 2019) .......................................................................19

*In re Landry*,
    83 F.4th 300 (5th Cir. 2023) ...........................................................11, 12, 18, 20

*In re Paxton*,
    60 F.4th 252 (5th Cir. 2023) .......................................................................19

*Louisiana v. Callais*,
    145 S.Ct. 2608 (2025)...........................................................................*passim*

1

*Louisiana v. Callais*,
Case No. 24-109 (U.S. June 18, 2024) .................................................................6

*LULAC v. Abbott*,
No. 3:21-cv-259 (W.D. Tex. Aug. 11, 2025) .......................................................4

*Merrill v. Milligan*,
142 S.Ct. 879 (2022)....................................................................................18, 20

*Nairne v. Ardoin*,
No. 3:22-cv-178 (M.D. La. Aug. 6, 2025)........................................................4, 7

*Nairne v. Landry*,
151 F.4th 666 (5th Cir. 2025) ..............................................................................7

*Nairne v. Landry*,
Order Granting Motion to Hold Appeal in Abeyance Pending
Supreme Court's Decision in *Callais*, No. 24-30115 (5th Cir. Nov.
26, 2025) ...............................................................................................................4

*PHH Mortgage Corp. v. Old Republic Nat'l Title Ins. Co.*,
80 F.4th 555 (5th Cir. 2023) ..............................................................................16

*Rodriguez de Quijas v. Shearson/Am. Express, Inc.*,
490 U.S. 477 (1989).............................................................................................13

*Tashjian v. Republican Part of Conn.*,
479 U.S. 208 (1986)............................................................................................17

*Wedgeworth v. Fibreboard Corp.*,
706 F.2d 541 (5th Cir. 1983) .......................................................................15, 16

**Statutes**

28 U.S.C. § 1253 ...........................................................................................................6

28 U.S.C. § 1292 .........................................................................................................14

28 U.S.C. § 1651 .........................................................................................................11

**Other Authorities**

Fed. R. App. P. 21(a)(1) ................................................................................................5

2

U.S. Const. art. III, § 1 ...........................................................................13

3

**ISSUES PRESENTED**

Whether this Court should issue a writ of mandamus ordering the district court to stay trial proceedings pending the Supreme Court's resolution of *Louisiana v. Callais* where that decision will certainly impact the result of this redistricting case, where the district court flipped the burden at this juncture, and where proceeding to trial will result in an extraordinary amount of waste.

**STATEMENT OF THE CASE**

While the Supreme Court of the United States considers a landmark case with respect to Section 2 of the Voting Rights Act, the district court is racing toward trial in this redistricting case on an expedited and severely truncated schedule with a trial date currently set for January 26. The district court refused to issue a stay pending the Supreme Court's decision in *Louisiana v. Callais*, breaking ranks with other courts in this circuit that have done so,[1] including this one.[2] The district court has

---

[1] *See Nairne v. Ardoin*, No. 3:22-cv-178, at Doc. No. 345 (M.D. La. Aug. 6, 2025) (granting stay and cancelling pretrial conference and other evidentiary hearings pending resolution by the Supreme Court in *Callais*); *Clark v. Edwards*, No. 3:86-cv-435, at Doc. No. 752 (M.D. La. July 17, 2025) ("[T]his matter is stayed and administratively closed pending a decision by the United States Supreme Court in *Louisiana v. Callais*[.]"); *LULAC v. Abbott*, No. 3:21-cv-259, at Doc. No. 1126 (W.D. Tex. Aug. 11, 2025) (three-judge panel) (staying proceedings in redistricting litigation and suspending deadlines for findings of facts and conclusions of law pending a decision in *Callais*); *Elizondo v. Spring Branch Indep. Sch. Dist.*, 2025 WL 2664245, at *6 (S.D. Tex. Sept. 17, 2025) (concluding that the standard "has a significant potential to change following the Supreme Court's decision in *Callais*" and that under the "circumstances the public interest would be better served by maintaining the status quo until the Supreme Court decides the *Callais* cases.").

[2] *Nairne v. Landry*, Order Granting Motion to Hold Appeal in Abeyance Pending Supreme Court's Decision in *Callais*, No. 24-30115 (5th Cir. Nov. 26, 2025).

PD.60190564.1

now doubled-down on that decision, denying petitioners' motion for reconsideration of that denial of a stay. With greatest respect to the district court, proceeding to trial before the Supreme Court's decision in *Callais* will waste valuable and exorbitant amounts of public,[3] private, and judicial resources, invite legal error, unnecessary appeals, and possibly even retrial, and undermine the Supreme Court's role in settling important questions of law. On top of it all, the district court premised its decision on an incorrect burden, presuming an injury to Respondents where Respondents haven't proven a thing. This Court should issue a writ of mandamus to the district court ordering a stay of trial proceedings pending the Supreme Court's decision in *Callais*.

## I.       The Relevant Background

In September 2024, a local chapter of the National Association for the Advancement of Colored People (NAACP), as well as Delta Sigma Theta Sorority, and two individuals (together, "Respondents"),[4] filed this action claiming that

---

[3] Petitioners' litigation fees are taxpayer funds, and a massive amount of taxpayer funds has already been expended because of the expedited trial and truncated litigation schedule in this fact-intensive case. If Petitioner's have to proceed to trial on January 26 and are forced to expend even more significant sums of taxpayer monies on said trial, just to have the Supreme Court shift its voting-rights jurisprudence, all that taxpayer money would have been simply wasted, and all that time, energy, and resources (including judicial) would have been for naught. Further, such enormous expenses will further be exacerbated by increased costs due to post-trial motions, appeals, and possibly re-trial, prolonging exponential expense and this litigation for many months, if not years. This huge waste of taxpayer funds can be completely foreclosed by simply staying the trial of this matter pending a decision in Callais.

[4] "All parties to the proceeding in the trial court other than the petitioner are respondents for all purposes" in filing a petition for writ of mandamus. FED. R. APP. P. 21(a)(1).

PD.60190564.1

DeSoto County, Mississippi's 2022 redistricting plan from which twenty-five county officials are elected from single-member districts across five separate sets of county offices dilutes black voting power in violation of Section 2 of the Voting Rights Act of 1964, 52 U.S.C. § 10301.[5] Doc. No. 1.

Importantly, an appeal from a three-judge panel decision was docketed at the Supreme Court of the United States in a separate Voting Rights Act case arising out of the Middle District of Louisiana.[6] *Louisiana v. Callais*, Case No. 24-109 (U.S. June 18, 2024). That case concerns similar questions to this one, as the plaintiffs in that case also challenged redistricting legislation under Section 2 of the Voting Rights Act.[7] The Supreme Court heard oral argument in *Callais* on March 24, 2025. But unable to resolve the questions presented during the October 2024 Term, the Supreme Court extraordinarily restored the case to the calendar for reargument during the October 2025 Term. *Louisiana v. Callais*, 606 U.S. __, 145 S.Ct. 2608,

---

[5] "Petitioners" are therefore DeSoto County, the DeSoto County Board of Supervisors, the DeSoto County Election Commission, and the DeSoto County Circuit Clerk Dale Thompson.

[6] There was no petition for certiorari, as that appeal was taken from a three-judge district-court panel pursuant to 28 U.S.C. § 1253. *See Louisiana v. Callais*, 606 U.S. __, 145 S.Ct. 2608, 2610 (2025) (Thomas, J., dissenting) (noting that the Supreme Court's appellate jurisdiction was "mandatory").

[7] The questions presented to the Supreme Court in that appeal are whether the three-judge panel erred by "finding that race predominated" legislatively drawn maps, finding that those maps failed strict scrutiny, and subjecting those maps to the *Gingles* preconditions, as well as whether that action was non-justiciable and whether the State's creation of a second majority-minority district violated the Fourteenth or Fifteenth Amendments to the Constitution. The questions presented are posted on the Supreme Court's website, available here: https://www.supremecourt.gov/qp/24-00109qp.pdf.

PD.60190564.1

2608 (2025).  The case was again briefed, and the Supreme Court held a second oral argument on October 15, 2025.  The Court has not yet issued a decision.

## II.     The District Court's Decisions

After the Supreme Court's first oral argument in *Callais*, the district court expedited the trial of this matter at Respondents' request and over Petitioners' objection.  The district court offered no explanation for why it expedited the trial. *See* Doc. No. 90.

Following the Supreme Court's recalendaring of *Callais*—Petitioners moved the district court to stay proceedings pending the Supreme Court's decision in *Callais*, or in the alternative to continue the expedited trial date.  Doc. Nos. 199 & 200.  Specifically, Petitioners pointed to other district courts in this circuit that have granted similar stays pending the Supreme Court's decision in *Callais*.  *See* Doc. No. 200, at 6 (citing *Narine v. Ardoin*, No. 3:22-cv-178, at Doc. No. 345 (M.D. La. Aug. 6, 2025); *Clark v. Edwards*, No. 3:86-cv-435, at Doc. No. 752 (M.D. La. July 17, 2025); *LULAC v. Abbott*, No. 3:21-cv-259, at Doc. No. 1126 (W.D. Tex. Aug. 11, 2025)).  And Petitioners noted that this Court had held the mandate in Case No. 24-30115 the same day that the panel decision issued in *Nairne v. Landry*, 151 F.4th 666 (5th Cir. 2025), another Voting Rights Act case.  *See* Case No. 24-30115, at Doc. No. 313 (5th Cir. Aug. 14, 2025).

PD.60190564.1

The district court denied that motion to stay on October 27, 2025, wrongly flipping the burden by accepting Respondents' allegations as true.[8]  In doing so, the district court noted the discretion that it possesses to maintain its docket before applying a three-factor test for determining whether to stay this matter pending the Supreme Court's resolution of *Callais*.  Doc. No. 301, at 1.  Specifically, the district court considered "(1) the potential prejudice to the moving party if a stay is denied; (2) the potential prejudice to the non-moving party if a stay is granted; and (3) other difficulties inherent in the general situation, including potential judicial inefficiency."  *Id.* (quotation marks and citations omitted).

As to the first, the district court shirked the idea that the waste that will transpire from rushing to trial was of any moment, finding that it was "nothing more than speculation."  Doc. No. 301, at 2.  The district court likewise found that the reason for this Court's holding of the mandate in *Nairne* was also speculative—it was too far a jump to assume that this Court held the mandate in *Nairne* due to the pendency of *Callais* at the Supreme Court.  *Id.* at 2–3.  Other than dismissing the notion that those factors should impact the inquiry at all, the district court did not consider that the moving party is a governmental entity, the interests that DeSoto

---

[8] *See* Doc. No. 301, at 4 ("[A]t this juncture of the proceedings it still must assume Plaintiffs' allegations of actual harm are true."); *see also id.* at 3 ("Plaintiffs allege a harm, and this harm must be remedied if proven regardless of whether the upcoming elections include one or all twenty-five of the county's offices.").

County has in maintaining the status quo (*i.e.*, not rushing towards a trial which might invalidate local laws), the number of attorneys involved on both sides, the truncated discovery afforded Petitioners, the exorbitant amount of time and money at risk, or the serious probability that the Supreme Court's decision in *Callais* will require a complete do-over which will multiply the prejudice felt by Petitioner. Without considering any of those factors, the district court found that factor one slightly favored Petitioners. *Id.* at 3.

On the second factor, the district court found prejudice only by assuming the truth of Respondents' allegations and the merits of their claims. That is, considering only that Respondents "currently suffer ongoing and irreparable harm by residing in racially dilutive districts" and that such harm "will continue if proceedings are stayed," the district court found Defendants' arguments "unpersuasive" and stated that "Plaintiffs allege a harm, and this harm must be remedied[.]" *Id.* at 3. In other words, the district court understood the law to require that it "assume Plaintiffs' allegations of actual harm are true." *Id.* at 4. And as to the final factor, the district court "acknowledge[d] the potential necessity of retrying this case after *Callais* is decided if it is not presently stayed," but due to questions of "conscience" the district court refused to stay proceedings based on "speculation." *Id.* at 4.

A month later, on November 26, this Court issued an unpublished order granting a motion to hold *Nairne* in abeyance "pending the decision of the Supreme

9

Court of the United States in No. 24-109, *Louisiana v. Callais*." Doc. No. 367-1. Because the district court viewed *Nairne* as "persuasive," *see* Doc. No. 301, at 2, Petitioners moved on an emergency basis for reconsideration as soon as they learned of this Court's unpublished order in *Nairne*, Doc. No. 368.

The district court denied that motion, noting only that this Court's order in *Nairne* "does not require [it to] reverse its prior decision because . . . the *Nairne* stay 'does not add any purported hardship or prejudice to Defendants,'" without considering the effect this Court's order had upon the district court's analysis of Respondents' alleged prejudice that would result from a stay. Doc. No. 379, at 2 (quoting Doc. No. 371, at 4).

Thus, Petitioners now find themselves in the position of being fast-tracked to a three-week, complex trial scheduled to begin on January 26 despite the fact that an indisputably important, on-point Supreme Court ruling looms and Respondents haven't shown their case to have the slightest amount of merit.

## SUMMARY OF THE ARGUMENT

While the Supreme Court considers an indisputably important case within the purview of Section 2 of the Voting Rights Act, the district court is racing toward trial in this voting-rights case on an expedited basis, with trial to begin in less than two weeks and where only one local election will occur in 2026. After refusing to stay this matter pending the Supreme Court's decision in *Louisiana v. Callais*—

10

disregarding the fact that other courts in this circuit have done so—the district court has now doubled-down, denying Petitioners' motion for reconsideration of that denial of a stay. With greatest respect, proceeding to trial before the Supreme Court's decision in *Callais* will waste valuable public, private, and judicial resources, invite legal error, unnecessary appeals, and possibly even retrial, and undermine the Supreme Court's role in settling important questions of law. To top it all off, the district court premises its decision on an incorrect burden, presuming the merits of Respondents' claims though Respondents have yet to prove a thing. Petitioners understand the exceptionality of the remedy they seek, but with all due respect to the district court, this Court should issue a writ of mandamus, ordering a stay of trial court proceedings pending the Supreme Court's decision in *Callais*.

## LEGAL STANDARD

The All Writs Act provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. Because they are established by acts of Congress, the courts of appeals have jurisdiction and the discretionary power to issue writs of mandamus where appropriate. *See, e.g.*, *In re Gee*, 941 F.3d 153, 157 (5th Cir. 2019).

This Court will issue a writ of mandamus "upon a determination that there has been a clear abuse of discretion." *In re Landry*, 83 F.4th 300, 304 (5th Cir. 2023)

(quoting *In re Volkswagen of Am., Inc.*, 545 F. 3d 304, 309 (5th Cir. 2008) (en banc)).

Specifically, this Court looks for three things to decide whether to issue a writ of mandamus. *Id.*

> First, the party seeking issuance of the writ [must] have no other adequate means to attain the relief he desires—a condition designed to ensure that the writ will not be used as a substitute for the regular appeals process. Second, the petitioner must satisfy the burden of showing that [his] right to issuance of the writ is clear and indisputable. Third, even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances.

*Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380–81 (2004); *accord In re Landry*, 83 F.4th 305–08. "These hurdles, however demanding, are not insuperable." *Cheney*, 542 U.S. at 381. Rather, "[t]hey simply reserve the writ 'for really extraordinary causes.'" *In re Gee*, 941 F.3d at 158 (citation omitted). "And in extraordinary cases, mandamus petitions 'serve as useful safety valves for promptly correcting serious errors.'" *Id.* (quoting *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009) (alteration accepted)).

## ARGUMENT

This is an extraordinary case where this Court should exercise its discretionary mandamus authority. Redistricting cases present high-stakes questions of great public importance. *See In re Landry*, 83 F.4th 300, 308 (5th Cir. 2023) (Ho, J., concurring) ("[M]andamus relief may be especially warranted where the stakes of the litigation are unusually significant." (citing *Abelesz v. OTP Bank*, 692 F.3d 638,

651 (7th Cir. 2012)).  This case is not only a redistricting case; it's a highly complex case in an area of the law that is far from clear.  Indeed, the law itself is complicated enough that our Nation's Highest Court has grappled with the same issues for two terms of Court, yet the district court here decided not to await further guidance from the Supreme Court, instead expediting the trial of this matter so that Petitioners' maps are certain to be reviewed before the only local election scheduled in 2026, an election for one of the twenty-five offices elected from the challenged district lines. That is an extraordinary decision, which implicates high-stakes, complex issues of law and that challenges the judicial hierarchy established by the Constitution.[9]  *See* U.S. Const. art. III, § 1 ("The judicial power of the United States, shall be vested in one Supreme Court, and in such *inferior* courts as the Congress may from time to time ordain and establish." (emphasis added)).

Given the extraordinary circumstances of this case, a writ of mandamus is warranted.  As explained below, (I) a writ of mandamus is the only means by which

---

[9] In the district court, Respondents relied upon the Supreme Court's famous warning in *Rodriguez de Quijas* to dissuade the district court from issuing a stay.  *See* Doc. No. 371, at 6; *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.").  But issuing a stay doesn't equate to overruling the Supreme Court's prior decisions; it merely means waiting on the Supreme Court to rule so that district courts are not stuck in the unenviable and inappropriate position of predicting what the Supreme Court may or may not do in pending cases.  *See also Ala. State Conf. of NAACP v. State*, 264 F. Supp. 3d 1280, 1287 (M.D. Ala. 2017) ("[T]he judicial prerogative involves applying precedent, not making predictions.").

13

Petitioners may obtain relief from the district court's severely truncated proceedings and the impending trial, and (II) with all due respect, the district court's refusal to issue a stay pending the Supreme Court's decision in *Callais* is a clear abuse of discretion and a usurpation of power. For those reasons, (III) a writ of mandamus is appropriate under the circumstances. Petitioners request that this Court issue a writ of mandamus to the district court, ordering it to stay proceedings pending the Supreme Court's decision in *Callais*.

## I.     A Writ of Mandamus Is the Only Means by Which Petitioners May Obtain Relief.

Petitioners will face serious legal uncertainty and public financial disadvantages should this trial be allowed to proceed without waiting for a decision from the Supreme Court in *Callais*. And those harms can't be remedied through any means other than a writ of mandamus. The district court's order isn't immediately appealable as it does not finally resolve the claims at issue, *see* 28 U.S.C. § 1292, and stay orders of this nature are rarely, if ever, suited for review under the collateral-order doctrine, *see Grace v. Vannoy*, 826 F.3d 813, 816 (5th Cir. 2016) ("Absent a *Moses Cone* situation, stay orders rarely satisfy [the collateral-order] requirements, and therefore, are usually not reviewable as collateral orders." (quoting *Kershaw v. Shalala*, 9 F.3d 11, 14 (5th Cir. 1993)). The district court has denied Petitioners' motion to reconsider its denial of Petitioners' motion to stay, and there is no remedy for the denial of that stay should Petitioners wait to raise that

14

error in a post-trial appeal. Therefore, a writ of mandamus is the only means by which Petitioners may obtain relief from the district court's order denying a stay pending the Supreme Court's decision in *Callais*.

## II. Petitioners Are Entitled to a Stay Pending the Supreme Court's Decision Where the District Court has Unreasonably Raced Toward Trial on a Truncated Schedule During the Pendency of *Callais*.

In determining whether a clear and indisputable right to mandamus relief exists, this Court "has long distinguished between discretionary decisions and non-discretionary duties." *In re Gee*, 941 F.3d at 158. "[I]f the district court has violated a non-discretionary duty, the petitioner necessarily has a clear and indisputable right to relief." *Id.* at 159. But "[i]f the issue 'is one committed to the discretion of the trial court, a clear and indisputable right to the issuance of the writ of mandamus will arise only if the district court has clearly abused its discretion, such that it amounts to a judicial usurpation of power." *Id.* at 158–59 (quoting *In re First S. Sav. Ass'n*, 820 F.2d 700, 707 (5th Cir. 1987)).

Here, whether to issue a stay is typically a matter committed to the discretion of the district court. *See, e.g.*, *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983). Thus, to show a clear and indisputable right to mandamus relief, Petitioners must show either a "clear and indisputable abuse of discretion or usurpation of judicial power by the trial court." *In re First S. Sav. Ass'n*, 820 F.2d at 706 (quoting *In re Cajun Elec. Power Coop., Inc.*, 791 F.2d 353, 365 (5th Cir.

15

1986)).  With respect, the district court clearly abused its discretion and overstepped its judicial power by refusing to stay this case in the light of the Supreme Court's impending decision in *Callais*.

First, abuse of discretion.  "Although [this Court has] recognize[d] the [district] court's broad discretion [to grant a stay pending the outcome of another proceeding], such control is not unbounded." *Wedgeworth*, 706 F.2d at 545.  Indeed, "[p]roper use of this authority 'calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.'" *Id.* (quoting *Landis v. North Am. Co.*, 299 U.S. 248, 254–55 (1936)).

A district court abuses its discretion in ruling upon a motion for a stay and thereby fails to properly use its authority to manage its docket where it bases its ruling on an erroneous view of the law, where its assessment of the facts is clearly erroneous, or where it fails to consider a relevant factor that should have been given significant weight.  *See, e.g.*, *PHH Mortgage Corp. v. Old Republic Nat'l Title Ins. Co.*, 80 F.4th 555, 559 (5th Cir. 2023); *Highmark Inc. v. Allcare Health Management Sys., Inc.*, 572 U.S. 559, 563 n.2 (2014).

In its first order denying a stay,[10] the district court did not consider the status quo or the general principle that legislatures should be given wide latitude in drawing

---

[10] The district court's order denying Petitioner's motion for reconsideration, the district court principally relied on the same reasons that he denied Petitioner's initial motion to stay.

their own maps—that state and local governments have a profound interest in seeing that the maps drawn by them are used until found violative of the federal law. *See* Doc. No. 301; *see also, e.g.*, *Tashjian v. Republican Part of Conn.*, 479 U.S. 208, 217 (1986) (recognizing compelling interests in "ensuring the administrability of [elections], . . . avoiding voter confusion, and protecting the responsibility of party government"). Nor did it consider that Respondents ironically waited two years to file suit, waiting until after their own delay to use the 2026 election as a reason for expedition. Instead, the district court is permitting this case to race toward an expedited trial where Respondents delayed in filing suit, where the law is uncertain, and for the purpose of allowing a challenge to state election maps where there's been no firm showing that those maps are violative of the Voting Rights Act or the Constitution.[11] And the district court is doing so for the stated purpose of hurrying so that Petitioners' maps can possibly be invalidated and remedied in advance of this year's single local election. Doc. No. 301, at 3–4. That will waste a significant amount of public resources where the legal underpinnings of the claims pressed could change at the drop of a hat and where those changes in the law will be settled in the next five months—before the end of the Supreme Court's current Term. *See supra* note 3.

---

[11] Respondents didn't even move for a preliminary injunction to obtain any finding that they were likely to succeed on the merits.

Even putting aside the district court's failure to consider the entire universe of prejudice to be felt by Petitioners absent a stay, the district court clearly abused its discretion by assuming the merits of Respondents' claims where Respondents haven't proven a thing. *See* Doc. No. 301, at 4. That is, in voting-rights litigation, federal courts serve a limited role, and there is a large amount of deference given to states and local governments in how they draw their own electoral maps. *See, e.g.*, *In re Landry*, 83 F.4th at 303 n.2. Only if those maps are violative of the Voting Rights Act or the Constitution will a federal court invalidate them—and in even rarer circumstances draw them for the state or local governments. *See, e.g.*, *Connor v. Finch*, 431 U.S. 407, 414–15 (1977) ("[A] state legislature is the institution that is by far the best situated to identify and then reconcile traditional state policies within the constitutionally mandated framework of substantial population equality."). Lastly, voting-rights litigation seeks to preserve the status quo, avoiding uncertainty in state election laws or maps on the eve of an election. *See, e.g.*, *Merrill v. Milligan*, 142 S.Ct. 879, 880–81 (2022) (Kavanaugh, J., concurring) ("When an election is close at hand, the rules of the road must be clear and settled."). But here, the district court assumed the merits of Respondents' claims, assuming that the maps were violative of, rather than consistent with, the Voting Rights Act. And the district court is moving extraordinarily quickly toward trial to have this case resolved before

the 2026 elections—again, which involve only one of the twenty-five offices elected from the challenged lines.

Finally, the district court could be held to have usurped judicial power by undermining the Supreme Court's role in finally resolving matters of broad public importance, *i.e.*, the governing legal principles applicable to Voting Rights Act litigation. With respect, the district court is inserting itself into a controversy that will only end in legal error, heightened costs, and further delay in the resolution of this matter, unless the district court accurately predicts the shifts in voting-rights jurisprudence coming through the Supreme Court's *Callais* decision—a task ill-suited for the judicial role. *See supra* note 9.

### III. A Writ of Mandamus Is Appropriate Under the Circumstances.

Finally, this Court "must be satisfied that the writ is appropriate under the circumstances." *In re JPMorgan Chase & Co.*, 916 F.3d 494, 499 (5th Cir. 2019) (quoting *Cheney*, 542 U.S. at 381). This Court has felt mandamus appropriate where "the law [is] governed by well-settled standards," and where the consequences of the district court's ruling "cannot be undone or corrected by the district court or a reviewing court once it occurs." *In re Paxton*, 60 F.4th 252, 260 (5th Cir. 2023).

There can be no doubt that the district court's ruling on Petitioner's motion to stay can't be undone absent this Court's intervention—the district court has already refused to correct that decision by denying Petitioners' motion for reconsideration,

and the ruling itself is a bell that can't be unrung should this trial begin. And the law in redistricting litigation is well-settled with respect to maintaining the status quo and affording state entities considerable discretion with respect to their maps unless and until there's been at least some showing that those maps are violative of Section 2 of the Voting Rights Act. *See, e.g.*, *In re Landry*, 83 F.4th at 303 & n.2 ("The Court has repeatedly held that redistricting and reapportioning legislative bodies is a legislative task which the courts should make every effort not to preempt."). Here, the district court is rushing this litigation with the stated purpose of issuing a judgment and remedy before the 2026 elections, *see* Doc. No. 301, at 3–4, but doing so will hardly leave any time for a remedy to be implemented by election day, assuming that the district court finds the current maps to be insufficient.

To the extent that will mean a federal court will have to ultimately intervene to draw maps, such a rushed effort violates the well-established *Purcell* principle— "a bedrock tenet of election law." *Merrill*, 142 S.Ct. at 880–81 (2022) (Kavanaugh, J., concurring) ("When an election is close at hand, the rules of the road must be clear and settled. Late judicial tinkering with election laws can lead to disruption and to unanticipated and unfair consequences for candidates, political parties, and voters, among others."). Under that principle, Petitioners have an "extraordinarily strong interest in avoiding late, judicially imposed changes to its election laws and procedures." *Id.*

20

# CONCLUSION

Petitioners understand the gravity of petitioning this Court for a writ of mandamus, but with respect, the district court's refusal to stay this case pending the Supreme Court's decision in *Callais* is a clear abuse of discretion and a usurpation of judicial power. This Court should intervene to correct the legal error that the district court committed by flipping the burden at this juncture and to prevent the waste and legal error to come should this trial proceed in the shadow of the Supreme Court's looming decision in *Callais*.

This, the 13th day of January 2026.

Respectfully submitted,

BY: /s/ *D. Michael Hurst, Jr.*
D. Michael Hurst, Jr., MB #99990
W. Thomas Siler, Jr., MS #6791
Nicholas F. Morisani, MB #104970
Nash E. Gilmore, MB #105554
Sonya C. Dickson, MB #106284
1905 Community Bank Way, Suite 200
Flowood, Mississippi 39232
Telephone: 601-352-2300
Telecopier: 601-360-9777
mike.hurst@phelps.com
nicholas.morisani@phelps.com
tommy.siler@phelps.com
nash.gilmore@phelps.com
sonya.dickson@phelps.com

and

Mark N. Halbert, MB #100048
Andrew W. Coffman, MB #106207
105 East Main Street, Suite 201

Tupelo, Mississippi 38804
Telephone: 662-842-7907
Telecopier: 662-842-3873
mark.halbert@phelps.com
andrew.coffman@phelps.com

*Counsel for Petitioners*

PD.60190564.1

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing petition complies with the type-volume limitation of Rule 21(d)(1) of the Federal Rules of Appellate Procedure because it contains 5,433 words.

This petition complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2016 in 14-point Times New Roman font, and all footnotes are in 12-point Times New Roman font.

Dated: January 13, 2026.

By:   */s/ D. Michael Hurst, Jr.*
      D. Michael Hurst, Jr.

PD.60190564.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of January 2026, I electronically filed the foregoing Petition with the Clerk of Court of the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system. All counsel of record is CM/ECF users and will be served by the appellate CM/ECF system.

Dated: January 13, 2026.

By:   */s/ D. Michael Hurst, Jr.*

D. Michael Hurst, Jr.

PD.60190564.1