# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

IN RE DESOTO COUNTY, MISSISSIPPI, ET AL.,
*Defendants-Petitioners.*

On Petition for Writ of Mandamus to the
United States District Court for the
Northern District of Mississippi, Oxford Division
Civil Action No. 3:24-CV-289-GHD-RP

## RESPONDENTS' OPPOSITION TO
## EMERGENCY PETITION FOR WRIT OF MANDAMUS

Brenda Wright
Stuart Naifeh
Kathryn Sadasivan
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector Street, Fifth Floor
New York, NY 10006
(212) 965-2200
bwright@naacpldf.org

Deuel Ross
  *Associate Director-Counsel*
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
700 14th Street NW, Suite 600
Washington, DC 20005

Daniel Hessel
ELECTION LAW CLINIC
HARVARD LAW SCHOOL
6 Everett Street, Ste. 4105
Cambridge, MA 02138
(617) 496-0222
dhessel@law.harvard.edu

Joshua Tom
ACLU OF MISSISSIPPI
101 South Congress Street
Jackson, MS 39201
Telephone: (601) 354-3408
jtom@aclu-ms.org

*Counsel for Respondents*

**CERTIFICATE OF INTERESTED PERSONS**

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Cir. R. 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

**Defendants-Petitioners**: DeSoto County, Mississippi, DeSoto County Board of Supervisors, and DeSoto County Election Commission, represented by Phelps Dunbar LLP attorneys D. Michael Hurst, Jr., W. Thomas Siler, Jr., Nicholas F. Morisani, Mark N. Halbert, Andrew W. Coffman, Nash E. Gilmore, and Sonya C. Dickson.

**Plaintiffs-Respondents**: Harold Harris, Pastor Robert Tipton, Jr., Delta Sigma Theta Sorority, Inc., and DeSoto County MS NAACP 5574, represented by ACLU of Mississippi attorneys Joshua Tom, Ayanna Hill, McKenna Raney-Gray, and Brendan Hopkins; by Badat Legal PLLC attorney Mohammed Amir Badat; by Election Law Clinic at Harvard Law School attorneys Daniel J. Hessel and Ruth Greenwood; and by NAACP Legal Defense and Educational Fund, Inc., attorneys Brenda Wright, Deuel Ross, Stuart Naifeh, Kathryn Sadasivan, Victor Genecin, Breanna Williams, Jory Burks, Victor Jones, and Pilar Whitaker.

**Other Interested Persons**: Senior Judge Glen H. Davidson, U.S. District Court for the Northern District of Mississippi, and Magistrate Judge Roy Percy, U.S. District Court for the Northern District of Mississippi.

Dated: January 15, 2026

Respectfully submitted,

*/s/ Daniel Hessel*

Daniel Hessel

*Counsel for Respondents*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................... iv

ISSUE PRESENTED ........................................................................................ 1

STATEMENT OF THE CASE ......................................................................... 1

BACKGROUND ............................................................................................... 5

    I.      Procedural Background ........................................................................ 5

    II.     The District Court's Management of Its Own Docket ......................... 8

LEGAL STANDARDS ................................................................................... 11

ARGUMENT ................................................................................................. 12

    I.      Petitioners Have Not Established a Clear and Indisputable Right
          to Encroach Upon the District Court's Management of Its Own
          Docket ............................................................................................... 13

          A.      The District Court Did Not Abuse Its Discretion .................... 13

          B.      The District Court's Exercise of Its Discretion Was Not a
                Judicial Usurpation of Power ................................................. 20

    II.     Petitioners Have Not Demonstrated They Have No Other Adequate
          Means to Obtain Relief ..................................................................... 23

    III.    A Writ of Mandamus Is Not Appropriate Under the Circumstances .. 24

CONCLUSION ............................................................................................... 26

CERTIFICATE OF SERVICE ....................................................................... 28

CERTIFICATE OF COMPLIANCE .............................................................. 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ala. State Conf. of the NAACP v. Allen*,
No. 25-13007, 2025 WL 3091433 (11th Cir. Oct. 30, 2025)...................2, 19, 21

*Ala. State Conf. of the NAACP v. Allen*,
No. 21-cv-1531-AMM, 2025 WL 2835140 (N.D. Ala. Oct. 1,
2025) ...........................................................................................................10, 20

*Allen v. Milligan*,
599 U.S. 1 (2023) ...........................................................................................21

*Cheney v. U.S. Dist. Ct. for D.C.*,
542 U.S. 367 (2004) ............................................................................2, 11, 24

*In re Davis*,
730 F.2d 176 (5th Cir. 1984).............................................................2, 9, 14, 16

*In re Depuy Orthopaedics, Inc.*,
870 F.3d 346 (5th Cir. 2017)..................................3, 4, 12, 13, 23, 25

*Drummond v. Fulton County Dept. of Family & Children Serv.*,
532 F.2d 1001 (5th Cir. 1976)............................................................16

*In re Gee*,
941 F.3d 153 (5th Cir. 2019)............................................................4, 12, 13, 20

*Matter of Hester*,
899 F.2d 361 (5th Cir. 1990), *abrogated on other grounds, see In
re El Paso Elec. Co.*, 77 F.3d 793 (5th Cir. 1996) ............................................23

*In re Jacobs*,
213 F.3d 289 (5th Cir. 2000)............................................................2, 11

*June Med. Servs., L.L.C. v. Phillips*,
No. 22-30425, 2022 WL 4360593 (5th Cir. Sept. 28, 2022) ............................13

*In re Landry*,
83 F.4th 300 (5th Cir. 2023)............................................................21, 22

iv

*Louisiana v. Callais*,
No. 24-109 (S. Ct. reargued Oct. 15, 2025) ...................................... 1, 4, 7, 20, 21

*Mallory v. Norfolk S. Ry. Co.*,
600 U.S. 122 (2023) ............................................................................... 2, 8, 21

*Nairne v. Landry*,
151 F.4th 666, 706 (5th Cir. 2025) .................................................................. 21

*Nairne v. Landry*,
No. 24-30115 (5th Cir. Nov. 26, 2025) ....................................................... 10, 24

*In re Paxton*,
60 F.4th 252 (5th Cir. 2023) ............................................................... 3, 24, 25

*Ramsey v. Sheet Pile, L.L.C.*,
130 F.4th 193 (5th Cir. 2025) ........................................................................ 16

*Robinson v. Ardoin*,
86 F.4th 574 (5th Cir. 2023) ....................................................................... 9, 18

*In re Strickland*,
87 F.4th 257 (4th Cir. 2023) ........................................................................ 13

*Topalian v. Ehrman*,
954 F.2d 1125 (5th Cir. 1992) ................................................................... 1, 13

*In re Tsarnaev*,
780 F.3d 14 (1st Cir. 2015) .......................................................................... 11

*Wedgeworth v. Fibreboard Corp.*,
706 F.2d 541 (5th Cir. 1983) ........................................................ 9, 14, 15, 17

*In re Wescott*,
135 F.4th 243 (5th Cir. 2025) ................................................................ 11, 12

*White v. State Bd. of Election Comm'rs*,
795 F. Supp. 3d 794 (N.D. Miss. 2025) ........................................................ 10

*Whole Woman's Health v. Paxton*,
972 F.3d 649 (5th Cir. 2020) ........................................................................ 16

**Statutes**

Voting Rights Act Section 2, 52 U.S.C. § 10301 ...................... 1, 6, 7, 16, 19, 21, 22

## ISSUE PRESENTED

Whether Petitioners are entitled to the extraordinary remedy of a writ of mandamus to prevent a district court from proceeding on January 26, 2026 with a long-scheduled trial implicating irreparable harms, where the district court properly balanced equitable factors in exercising its discretion to deny a stay, where Petitioners waited over two and a half months after the district court first denied their motion to file their petition, and where the sole basis for the petition is Petitioners' speculation that the Supreme Court *might* alter the law.

## STATEMENT OF THE CASE

This Petition involves an ordinary act of case management. The district court, after carefully weighing the equities and considering the pendency of *Louisiana v. Callais*, No. 24-109 (S. Ct. reargued Oct. 15, 2025) in the Supreme Court, declined to stay a long-scheduled trial to adjudicate an important Section 2 vote dilution claim. *See* 52 U.S.C. § 10301. The decision was the type of every-day docket management choice over which district courts are afforded "great discretion." *Topalian v. Ehrman*, 954 F.2d 1125, 1139 (5th Cir. 1992). The district court decided no rights. It imposed no liability. It issued no injunctions. And it created no burden on Petitioners beyond requiring them to participate in a trial that has been scheduled for many months.

The district court's exercise of its discretion is consistent with the instruction that lower courts should apply the law as it stands and leave to the Supreme Court the prerogative to overrule its own decisions. *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023). It is consistent with the principle that "[o]nly in rare circumstances will a litigant in one case be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *In re Davis*, 730 F.2d 176, 178 (5th Cir. 1984) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)). And the district court's approach is also consistent with decisions of other courts not to pause Section 2 litigation because of broad speculation about what the Supreme Court *might* do in the future. *See, e.g., Ala. State Conf. of the NAACP v. Allen*, No. 25-13007, 2025 WL 3091433 at *2 (11th Cir. Oct. 30, 2025).

In response to this basic order, Petitioners seek an extraordinary writ of mandamus—insisting that this Court must wield "one of 'the most potent weapons in the judicial arsenal'" to overrule the district court's management of its own docket. *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004) (quoting *Will v. United States*, 389 U.S. 90, 107 (1967)). That is completely unwarranted here.

 "The mandamus remedy is an extraordinary one, granted only in the clearest and most compelling cases." *In re Jacobs*, 213 F.3d 289, 290 (5th Cir. 2000) (quoting *In re Willy*, 831 F.2d 545, 549 (5th Cir. 1987)). It may issue only if Petitioners show (1) a "clear and indisputable" right to relief, (2) "no other adequate means" to obtain

it, and (3) that the writ is "appropriate under the circumstances." *In re Depuy Orthopaedics, Inc.*, 870 F.3d 346, 350 (5th Cir. 2017). Failure to satisfy any one of these requirements precludes a writ of mandamus. Petitioners fail to satisfy all three.

First, Petitioners cannot show a "clear and indisputable" entitlement to mandamus. Mandamus is typically reserved for the rare circumstance in which a district court has failed to perform a non-discretionary duty—and even then, only in the clearest of cases. *See In re Paxton*, 60 F.4th 252, 256 (5th Cir. 2023); *In re Gee*, 941 F.3d 153, 159 (5th Cir. 2019). Here, the bar is even higher, as Petitioners challenge a decision committed to the district court's discretion. For discretionary decisions, a "clear and indisputable right" to mandamus arises only if the district court has clearly abused its discretion in a manner so severe that it "amounts to a judicial usurpation of power." *In re Paxton*, 60 F.4th at 256 (quoting *In re Gee*, 941 F.3d at 158–59). That demanding standard is not remotely met. The challenged order is a quintessential exercise of a district court's broad discretion to manage its docket. The district court applied the established framework for granting a stay, weighed the competing equities, and concluded that Petitioners had not carried their burden of justifying a stay. *See* ECF No. 301. Each of those assessments was reasonable and correct, as was the district court's balancing of the three. While Petitioners may disagree with the district court's assessment, that disagreement does not amount to

the "clear abuse of discretion"—let alone a "judicial usurpation of power"—required for mandamus. *In re Gee*, 941 F.3d at 159.

Second, Petitioners fail to show they have no adequate alternative relief. Petitioners' arguments center on the expense of trial, which they insist they cannot avoid without mandamus. *See* Pet. at 5 & n.3. But that is true for every lower court order that does not end a case. That alone cannot meet their burden, or mandamus would become the rule, rather than the exception. The ordinary appellate process provides relief "in almost all cases, even where defendants face the prospect of an expensive trial." *In re Depuy Orthopaedics*, 870 F.3d at 352. In any event, the vast majority of the expenditures of time and attorneys' fees that Petitioners bemoan have already been incurred and will not be undone by staying a trial that is now only ten days away. Finally, mandamus is entirely inappropriate in the specific circumstances of this case. The fact that the Supreme Court is currently considering a case raising questions that concerns only the ultimate remedy that the district court *might* impose *if* the district court identifies a Section 2 violation hardly makes this case extraordinary. If a stay was mandated in every case whenever the Supreme Court takes up a potentially relevant issue, a vast swath of pending cases would grind to a halt every term. That simply does not happen. And indeed, that different courts, in managing their own dockets, have reached different decisions on whether to stay

Section 2 cases pending *Callais* confirms that this is a discretionary question, not a well-settled entitlement warranting the extraordinary intervention of this court.

Petitioners' extraordinary request for mandamus reflects a last-ditch effort to skirt or postpone a trial that will allow Respondents to vindicate their fundamental rights and cure the irreparable and ongoing harm they face from vote dilution. But Petitioners have no right—let alone a "clear and indisputable" one—to avoid trial to determine their liability. This Court should deny their petition.

## BACKGROUND

### I.      Procedural Background

Between 2010 and 2020, the Black population of DeSoto County, Mississippi increased from 22.5% to nearly 32% of the population. *See* ECF No. 318-1 at 10. Black DeSoto County residents have distinct candidate preferences from white residents, and after the 2020 census, advocated for a districting plan with a district that would allow Black voters an opportunity to elect candidates of their choice. The Board of Supervisors ignored those requests and, in 2022, drew a redistricting plan ("2022 Plan") that maintained all five county districts as majority white with the result that Black-preferred candidates are universally defeated. *See id*. at 19. To maintain all five districts as majority white, the 2022 Plan violates traditional districting principles by, for example, dividing communities of interest and splitting

the majority Black city of Horn Lake almost down the middle between two districts. *See* ECF No. 318-5.

The district lines in the 2022 Plan are used to elect not only the members of the Board of Supervisors, but also the members of the Board of Education, the Election Commission, the Justice Court judges, and the Constables for DeSoto County. Not one of the 25 elected officials in these DeSoto County offices is Black or was the candidate preferred by Black voters. *See* ECF No. 99 ¶ 5; ECF No. 318-3 at 6.

On September 12, 2024, Plaintiffs filed suit alleging that the 2022 Plan violates Section 2 of the Voting Rights Act, 52 U.S.C. § 10301. *See* ECF No. 1. After a brief stay due to Defendants' motion to dismiss, the court entered a case management order on February 19, 2025, *see* ECF No. 67. That order included a seven-month-long discovery period extending to September 26, 2025. *See id.* at 4. Discovery was subsequently extended to October 6, 2025, at Defendants' request. ECF Nos. 176, 178. The case management order initially included a trial date in April 2026. *See* ECF No. 67 at 4. To ensure effective relief should they win at trial, Plaintiffs moved to alter the trial date (without disturbing the discovery period as previously set). *See* ECF Nos. 74, 75. In support of their motion, Plaintiffs explained the severe, irreparable, and ongoing nature of the harm that they—and thousands of other DeSoto County residents—face. *See* ECF No. 75 at 3–5. They explained the

imperative of a resolution to ensure relief in time for the November 2026 elections. *See id.* at 5–7. On April 10, 2025, the court granted Plaintiffs' request to expedite trial and set a new trial date for January 2026. ECF No. 90. The decision did not truncate discovery or otherwise alter any case deadlines.

Discovery in this case was extensive. Section 2 cases typically rely upon expert testimony, and after Plaintiffs disclosed their expert reports in April 2025, Defendants received several unopposed extensions to disclose their expert reports. *See, e.g.*, ECF Nos. 102, 134. Ultimately, they disclosed three lengthy expert reports on July 11, 2025. ECF No. 136. Defendants waited until the very end of August 2025, to take their first depositions, *see* ECF No. 168. Defendants ultimately took nearly two dozen depositions before the end of the discovery period. Simply put, there was no shortage of opportunity for discovery. After discovery, Defendants also sought and received several extensions to file their motion for summary judgment, as well as their reply in support of that motion. Defendants' summary judgment motion was initially due on October 10, 2025, *see* ECF No. 67, but the deadline was extended several times, until October 24, 2025, *see* ECF No. 285. Their deadline to file a reply in support of the motion, meanwhile, was extended until nearly a month later, November 21. *See* ECF No. 326.

## II.    The District Court's Management of Its Own Docket

On September 3, 2025, ten months after the Supreme Court noted probable jurisdiction in *Louisiana v. Callais*, more than two months after the Supreme Court relisted the case, and more than a month after the Supreme Court issued its supplemental briefing order, Petitioners moved to stay the case pending the final decision in *Callais*. ECF No. 199.

In an exercise of its discretion, the district court denied the motion, appropriately applying the factors governing a stay. Specifically, the court assessed "(1) the potential prejudice to the moving party if a stay is denied; (2) the potential prejudice to the non-moving party if a stay is granted; and (3) other difficulties inherent in the general situation, including potential judicial inefficiency." ECF No. 301 at 1 (citing *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545–46 (5th Cir. 1983)).

The Court acknowledged and appropriately weighed that there may be some harm to Petitioners if their conjecture about the outcome of *Callais* and the Supreme Court's reasoning proves right—but emphasized that these harms were rooted in speculation. ECF No. 301 at 2. That conclusion was consistent with the Supreme Court's directive that lower courts should not attempt to pre-empt the Supreme Court on changes to the law and should apply the law as it stands rather than speculate as to whether and how it might change. *See Mallory*, 600 U.S. at 136.

The district court also assessed the prejudice to Respondents of staying the case pending *Callais*. The court appropriately concluded that the potential harm Respondents face from a stay is severe, ongoing, and irreparable. The district relied on the Supreme Court's observations that voting rights reflect "a fundamental political right" that is "preservative of all rights," ECF No. 301 at 3 (quoting *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886)), and that "[o]ther rights, even the most basic, are illusory if the right to vote is undermined,'" *id.* (quoting *Reynolds v. Sims*, 377 U.S. 533, 560 (1964)). And, as this Court has observed, there can be no doubt that vote dilution presents irreparable harm. *Robinson v. Ardoin*, 86 F.4th 574, 600 (5th Cir. 2023). The district court's assessment of what harms a stay might cause to Respondents was consistent with the court's obligation to consider "[t]he realities of the hardship of a stay" on the non-moving party, even if that party has not yet had opportunity to prove its claims. *Wedgeworth*, 706 F.2d at 545.

Finally, the district court considered "other difficulties inherent in the general situation," including Petitioners' arguments that a trial was unwarranted because only one seat is up for election in 2026. The district court rejected the validity of that argument, underscoring that, given the importance of the rights at stake, the harms facing Respondents warrant remedy regardless of the number of seats up for election in 2026. *See* ECF 301 at 3–4.

All told, in balancing these factors, the district court concluded that the potential prejudice to Respondents from staying the case outweighed any harm to Petitioners from allowing trial to proceed. *See id.* at 4. This decision appropriately placed the burden on Petitioners, as the party seeking the stay, to prove it was warranted. *See In re Davis*, 730 F.2d at 178 (party seeking stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility" that the stay will harm non-movant). The decision was also consistent with several other courts that have declined to pause Section 2 litigation during the pendency of *Callais. See, e.g.*, *Ala. State Conf. of the NAACP v. Allen*, No. 21-cv-1531-AMM, 2025 WL 2835140, at *3 (N.D. Ala. Oct. 1, 2025); *White v. State Bd. of Election Comm'rs*, 795 F. Supp. 3d 794 (N.D. Miss. 2025) (issuing injunction in Section 2 case after *Callais* briefing order).

On the eve of trial, and only after their motion for summary judgment was denied on December 18, 2025, *see* ECF No. 359, Petitioners again sought to avoid trial by moving for reconsideration of the district court's denial of their stay, ECF No. 367. Petitioners invoked a divided panel decision of this Court in *Nairne v. Landry* suspending *en banc* proceedings (only after a full trial on the merits and initial decision by a panel of this Court). *Nairne v. Landry*, No. 24-30115 (5th Cir. Nov. 26, 2025). Petitioners indicate that they moved for reconsideration "as soon as they learned" about that order, Pet. at 10, but the order in question was issued over

a month before they filed their reconsideration motion. On January 12, 2026, the district court denied Defendants' motion for reconsideration. ECF No. 379. The district court explained that one sentence order in *Nairne*, which was devoid of any analysis, "does not add any purported hardship or prejudice" to Petitioners, and given the harms facing Respondents, Petitioners "still fail to overcome the equitable analysis necessary for a stay in the proceedings." *Id.* at 2.

## LEGAL STANDARDS

Mandamus "is a 'drastic and extraordinary' remedy 'reserved for really extraordinary causes.'" *Cheney*, 542 U.S. at 380 (quoting *Ex parte Fahey*, 332 U.S. 258, 259–60 (1947)). "The mandamus remedy is . . . granted only in the clearest and most compelling cases in which a party seeking mandamus shows that no other adequate means exist to attain the requested relief and that the right to the issuance of the writ is 'clear and indisputable.'" *In re Jacobs*, 213 F.3d at 290 (quoting *In re Willy*, 831 F.2d 545, 549 (5th Cir.1987)). Mandamus is "generally thought an inappropriate prism through which to inspect exercises of judicial discretion," *In re Tsarnaev*, 780 F.3d 14, 18 (1st Cir. 2015), and thus "[o]nly exceptional circumstances amounting to a judicial usurpation of power, or a clear abuse of discretion, will justify the invocation of this extraordinary remedy." *Cheney*, 542 U.S. at 380 (internal quotation marks and citation omitted).

Because the writ of mandamus is one of "the most potent weapons in the judicial arsenal," *id.* at 380, three conditions must be satisfied before it may issue. "'First, the party seeking issuance of the writ must have no other adequate means to attain the relief he desires—a condition designed to ensure that the writ will not be used as a substitute for the regular appeals process.'" *In re Wescott*, 135 F.4th 243, 245 (5th Cir. 2025) (quoting *Cheney*, 542 U.S. at 380–81). "'Second, the petitioner must satisfy the burden of showing that his right to issuance of the writ is clear and indisputable.'" *Id.* (quoting *Cheney*, 542 U.S. at 380–81)). Where, the challenged decision is discretionary in nature, mandamus is limited to "clear abuses of discretion that produce patently erroneous results." *In re Depuy Orthopaedics*, 870 F.3d at 351. In other words, the abuse of discretion must be so severe as to "amount[] to a judicial usurpation of power." *In re Gee*, 941 F.3d at 159. Finally, "'even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances.'" *In re Wescott*, 135 F.4th at 245 (quoting *Cheney*, 542 U.S. at 380–81).

## ARGUMENT

Petitioners seek extraordinary relief to undo one of the most ordinary actions a district court can undertake: the basic management of its own docket. Petitioners attempt to frame the district court's ordinary docket-management decision, which faithfully applied precedent, as a "usurpation of power" of the judicial hierarchy.

*See, e.g.*, Pet. at 14. It is no such thing. Petitioners are not entitled to the extraordinary relief they seek, and the Petition should be denied.

## I.    Petitioners Have Not Established a Clear and Indisputable Right to Encroach Upon the District Court's Management of Its Own Docket

Demonstrating a "clear and indisputable" right to mandamus relief is a high bar, requiring "more than a showing that the court misinterpreted the law, misapplied it to the facts, or otherwise engaged in an abuse of discretion." *In re Depuy Orthopaedics*, 870 F.3d at 350–51. Petitioners concede, as they must, that the district court did *not* have a mandatory duty to grant their stay. *See* Pet. at 15. Where, as here, the district court's decision is discretionary, this Court will "review only for clear abuses of discretion that produce patently erroneous results." *In re Depuy Orthopaedics*, 870 F.3d at 351. The abuses of discretion must be so severe as to "amount[] to a judicial usurpation of power." *In re Gee*, 941 F.3d at 159. The district court's order does not come close to meeting that standard

### A.    The District Court Did Not Abuse Its Discretion

The district court has broad discretion regarding trial proceedings, including the timing and scheduling of trial. Indeed, "[d]istrict courts generally are afforded great discretion regarding trial procedure applications (including control of the docket and parties)." *Topalian*, 954 F.2d at 1139. For that reason, this Court has repeatedly denied mandamus petitions that would upend a district court's management of this docket. *See, e.g.*, *In re Depuy Orthopaedics*, 870 F.3d at 350–

51 (denying mandamus petition to prevent court from commencing bellwether trial in multidistrict litigation); *June Med. Servs., L.L.C. v. Phillips*, No. 22-30425, 2022 WL 4360593, at \*2 (5th Cir. Sept. 28, 2022) (denying mandamus petition concerning district court's denial of motion to vacate injunction "forthwith or within two days"); *see also, e.g.*, *In re Strickland*, 87 F.4th 257, 261 (4th Cir. 2023) (denying mandamus relief when requested order "would invade the broad discretion that is given to the district court to manage its docket" (marks and citation omitted)).

The district court did not abuse that "great discretion" in declining to stay the trial of Respondents' claim pending *Callais*. This Court has explained that "[t]he party seeking a stay bears the burden of justifying a delay tagged to another legal proceeding" and "'must make out a clear case of hardship or inequity in being required to go forward, if there is even a *fair possibility* that the stay for which he prays will work damage to someone else.'" *Wedgeworth*, 706 F.2d at 545 (quoting *Landis*, 299 U.S. at 255) (emphasis added). A stay in such cases is appropriate "[o]nly in rare circumstances." *In re Davis*, 730 F.2d at 178 (quoting *Landis*, 299 U.S. at 255). Here, the district court applied those principles and reasonably concluded that this case was not that rare circumstance that justified a stay.

Here, the district court appropriately applied and weighed several factors governing a stay of proceedings: "(1) the potential prejudice to the moving party if a stay is denied; (2) the potential prejudice to the non-moving party if a stay is

granted; and (3) other difficulties inherent in the general situation, including potential judicial inefficiency." ECF No. 301 at 1 (citing *Wedgeworth*, 706 F.2d at 545–46). As to the first factor, the district court considered and acknowledged the possible prejudice to Petitioners of denying a stay but concluded that the other factors militated against a stay. *Id.* at 2–3. As to the second factor, the court appropriately concluded that the potential prejudice to Respondents was substantial and outweighed any prejudice to Petitioners. *Id.* at 3. Finally, the district court concluded that any concerns regarding judicial efficiency reflected "speculation" about the outcome of *Callais* and that the "*potential* necessity of retrying th[e] case" did not warrant a stay. *Id.* at 3–4. After considering and weighing all the factors, the district court concluded that Petitioners had not met their burden of justifying a stay pending a separate legal proceeding. *Cf. Wedgeworth*, 706 F.2d at 545 ("We are persuaded that the requisite balancing of the competing interests involved in these cases weighs in favor of allowing the remaining actions to proceed.").

Petitioners' complaints about the district court's application of these factors are meritless. As to the first factor, Petitioners now insist that the district court shortchanged their claims of prejudice. But *nothing* in the district court's decision undermines the "general principle that legislatures should be given wide latitude in drawing their own maps." Pet. at 16–17. The district court has not yet taken any action to prevent DeSoto County from using its enacted plan. Nor did it in any way

curb the County's latitude in drawing that plan. It simply declined to stay a trial to determine *whether* the maps are indeed violative of federal law. Holding a trial to determine liability on a Section 2 claim does not violate a legislature's "wide latitude" to draw its own maps or to use them pending resolution of the case. Even if the district court does find a Section 2 violation after trial, DeSoto County would still have the right in the first instance to redraw its map. Moreover, Petitioners raised this argument for the first time in their Petition before this Court, and the district court did not have the opportunity to consider it. *Compare id.*, *with* ECF Nos. 200, 368 (not raising these arguments and discussing only prejudice from expending resources). The district court can hardly be accused of abusing its discretion by failing to consider a purported harm that was never called to its attention. *Cf. Ramsey v. Sheet Pile, L.L.C.*, 130 F.4th 193, 202 (5th Cir. 2025) ("We do not fault the district court for not addressing arguments not before it, and thus the district court did not abuse its discretion."); *Whole Woman's Health v. Paxton*, 972 F.3d 649, 653 (5th Cir. 2020) (holding that a motion to stay was "patently procedurally defective" where the applicants asked the appellate court to hear "profoundly belated" arguments presented "in the first instance" on appeal).

As to the second factor governing their stay request, Petitioners repeatedly accuse the district court of "flipping the burden," merely by acknowledging that Respondents face irreparable harm. Pet. at 7, 8, 21. This fails on multiple levels.

Petitioners, as the party requesting a stay, bear the burden of proof. "[I]f there is *even a fair possibility* that the stay . . . will work damage to [someone] else," the party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward." *In re Davis*, 730 F.2d at 178 ((quoting *Landis*, 299 U.S. at 255) (emphasis added)); *cf. Drummond v. Fulton County Dept. of Family & Children Serv.,* 532 F.2d 1001, 1002 (5th Cir. 1976) ("The burden of proof" is on the party moving for the stay.). Requiring Respondents to prove their case to avoid a stay would have been "flipping the burden." The district court properly held Petitioners to a burden that was theirs to meet.

Moreover, the district court's analysis was consistent with other courts' applications of this Court's precedents. The district court considered "the *potential* prejudice to the non-moving party if a stay is granted." ECF No. 301 at 1 (emphasis added). That consideration, which assumed the truth of Respondents' claim to determine whether a stay might prejudice them, does not improperly reallocate any burden. It simply made a case-specific assessment of the harm Respondents might face here. This Court, too, has considered "[t]he realities of the hardship of a stay" on non-moving parties based on their allegations. *Wedgeworth*, 706 F.2d at 545. Indeed, considering the potential prejudice to the non-moving party *requires* the district court to consider what harm might befall Respondents if their allegations are true and a stay is granted.

Furthermore, Petitioners' assertion that "Respondents haven't shown their case to have the slightest amount of merit," Pet. at 10, overlooks the record: The district court has already considered and denied a motion to dismiss, *see* ECF Nos. 97, 98, and a motion for summary judgment, *see* ECF Nos. 358, 359. Its conclusion that Respondents have sufficiently demonstrated irreparable harm to defeat a stay motion on which Petitioners bear the burden is well grounded. If conclusive *proof* of irreparable harm to the non-moving party were required to avoid a stay, as Petitioners suggest, no court could *ever* consider whether a stay might harm the non-moving party prior to a trial; after all, trial is where the non-moving party proves its case. Issuing a mandamus here would invite other parties to flood this Court with constant requests for improper interlocutory appeals on the eve of trial even after the denial of summary judgment.

And to be sure, in this case, the prejudice Respondents face is severe. Vote dilution reflects an "ongoing and irreparable harm that will persist unless the map is changed." *Robinson*, 86 F.4th at 600. Waiting until after the next election to adjudicate Respondents' claims only risks aggravating their harm: "Once an 'election occurs, there can be no do-overs and no redress' for voters whose votes were diluted." *Id.* (quoting *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014)). The district court appropriately recognized the severity of the harm, and the importance of the rights at stake. ECF No. 301 at 3.

The district court did not misallocate any burden or otherwise abuse its discretion in accounting for the prejudice to Respondents of being forced to wait for *Callais*.

As to the third factor, Petitioners repeatedly suggest that the district court abused its discretion because there is only one seat up for a regularly scheduled election in 2026. *See* Pet. at 17. But the district court accounted for this argument and aptly explained that, given the severity of the harm, it must be remedied "regardless of whether the upcoming elections include one or all twenty-five of the county's offices." ECF No. 301 at 3. Similarly, the district court appropriately accounted for any potential "judicial inefficiency" from denying a stay, explaining that Petitioners' arguments regarding a potential need to retry the case were speculative. *See* ECF No. 301 at 3. Given the Supreme Court's repeated admonition that lower courts should apply the law as it stands and not assume that it might change, the district court's assessment was proper.

The district court's decision was consistent with several other courts' similar decisions not to pause proceedings in Section 2 cases pending *Callais*. In *Alabama State Conference of the NAACP v. Allen*, the Eleventh Circuit denied a motion to stay the district court's injunction of a redistricting plan it had found violated Section 2. *Ala. State Conf. of NAACP*, 2025 WL 3091433 at *2. Alabama "implicitly, but not subtly, ask[ed] [the Court] to reject the *Gingles* framework for determining whether a districting plan violates § 2 of the Voting Rights Act." *Id.* at *4. But, as the Eleventh

Circuit explained, both the Court of Appeals "and the district court, are bound to apply the law as it currently stands." *Id.* (collecting cases). "And *Gingles* is the law." *Id.* (citing *Allen v. Milligan*, 599 U.S. 1, 24 (2023)). In that same case, the district court also denied a motion to stay remedial proceedings pending *Callais*, concluding it "cannot forestall or deny relief that is due based on such predictions." 2025 WL 2835140, at *3; *see also id.* ("If the Supreme Court changes the law, the [defendant] may renew his stay application. Unless and until such a change occurs, the plaintiffs are entitled to relief from the [] unlawful electoral plan."). On its own terms, the district court's decision was an appropriate and ordinary exercise of discretion. The fact that other courts have reached the same conclusion only underscores that the court did not abuse its substantial discretion in this area.

### B. The District Court's Exercise of Its Discretion Was Not a Judicial Usurpation of Power

Even if Petitioners could show that the district court's docket-management was an abuse of discretion (they cannot), they certainly cannot show that the court's discretion was so patently abused as to amount to a "judicial usurpation of power." *In re Gee*, 941 F.3d at 159. Petitioners suggest that the district court "*could be held to have usurped judicial power by undermining the Supreme Court's role in finally resolving matters of broad public importance.*" Pet. at 19 (emphasis added). But they do not explain how holding a trial under well-established legal standards undermines the Supreme Court's role.

20

Far from undermining the Supreme Court, the district court is doing precisely what the Supreme Court has instructed lower courts to do. Petitioners would have the district court speculate that the Supreme Court will change the law in *Callais*, rather than apply the law as it stands. But the Supreme Court has repeatedly held that "a lower court 'should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.'" *Mallory*, 600 U.S. at 136 (quoting *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989)).

The law, as it stands, is clear and was pronounced by the Supreme Court less than three years ago in *Allen v. Milligan*, which reaffirmed the existing Section 2 framework. 599 U.S. 1 (2023). Lower courts have consistently applied that framework even as *Callais* was pending. This Court applied that framework in *Nairne*, rejecting an argument because the "*Milligan* majority rejected a nearly identical constitutional challenge." 151 F.4th 666, 706 (5th Cir. 2025). That decision came down *after* the Supreme Court issued its briefing order in *Callais.* Even more recently, the Eleventh Circuit denied a stay in another Section 2 case and rejected defendants' invitation to "reject the *Gingles* framework," explaining: "we, and the district court, are bound to apply the law as it currently stands." *Ala. State Conf. of NAACP*, 2025 WL 3091433 at *2. In both cases, the decisions applied Section 2 law as it stands—and did so without hesitation notwithstanding the *Callais* case. By

Petitioners' theory, though, both these decisions usurped the Supreme Court's authority by not waiting until *Callais* is decided. That is obviously incorrect.

Petitioners' scattered references to *In re Landry*, 83 F.4th 300 (5th Cir. 2023), are misplaced. *See* Pet. at 11, 12, 18, 20. *In re Landry* dealt with remedial proceedings following a preliminary injunction. 83 F.4th at 305–06. The district court was set to engage in remedial proceedings, prior to a trial on the merits and more than a year before the subsequent elections. *Id.* On the state's petition for mandamus, this court determined that in those circumstances, the district court had a non-discretionary duty to afford the legislature an opportunity to enact a remedy prior to any court-ordered remedy. That reasoning was consistent with the well-established rule that a legislature should be given the first opportunity to enact a remedy once its redistricting plan has been enjoined. *See, e.g.*, *id.* at 303 (citing *Wise v. Lipscomb*, 437 U.S. 535, 540 (1978)). As a result, *In re Landry* concluded that the district court's "action in rushing redistricting via a court-ordered map" violated the legislature's clear right to attempt to remedy its violation. *In re Landry*, 83 F.4th at 304. While a legislature would be entitled to an opportunity to enact its own remedial plan if the district court finds it liable for violating Section 2 after trial, there is no right to avoid a liability determination altogether. Yet that is what Petitioners assert here. Whereas in *Landry*, the state *sought* a trial to fully determine liability before being forced to implement a remedy, Petitioners here seek to *avoid* a trial altogether.

In denying a stay of the trial, the district court did not abuse its discretion or usurp the authority of Petitioners to draw their own maps consistent with federal lay. The petition should be denied.

## II. Petitioners Have Not Demonstrated They Have No Other Adequate Means to Obtain Relief

In addition to showing a clear and indisputable right to relief, Petitioners must clear the "high bar" of showing that they have no other adequate means to obtain relief. *In re Depuy Orthopaedics*, 870 F.3d at 352. They cannot do so here. They argue that they cannot bring an interlocutory appeal of the district court's stay denial, and that the denial of the stay cannot be redressed through a post-trial appeal. *See* Pet. at 14. But Congress determined which interlocutory orders are immediately appealable and which are not, and "mandamus is not a means of correcting the district court's unappealable orders, assuming *arguendo* that correction is needed." *Matter of Hester*, 899 F.2d 361, 367 (5th Cir. 1990), *abrogated on other grounds, see In re El Paso Elec. Co.*, 77 F.3d 793, 794–95 (5th Cir. 1996).

Nor can Petitioners clear make their showing simply because they "face serious legal uncertainty and public financial disadvantages" if trial is not stayed. Pet. at 14. *Any* litigant facing trial incurs the prospect of legal uncertainty and financial cost. This Court has explained that "the appeals process provides an adequate remedy in almost all cases, *even where defendants face the prospect of an expensive trial*." *In re Depuy Orthopaedics,* 870 F.3d at 352 (citing *In re Lloyd's*

23

*Register North America, Inc.*, 780 F.3d 283, 288 (5th Cir. 2015)) (emphasis added).

Were it otherwise, mandamus could be used to transform every case into a series of

piecemeal appeals of every quotidian order that led a party to incur further costs of

litigation.

### III.    A Writ of Mandamus Is Not Appropriate Under the Circumstances

Even if Petitioners could satisfy the first two mandamus requirements (they

cannot), they must still independently demonstrate that the issuance of a writ of

mandamus is "appropriate under the circumstances." *Cheney*, 542 U.S. at 381.

Petitioners cannot satisfy this requirement.

First, the legal issue presented is not "well-settled" in the way that would

warrant mandamus. Petitioners cite *In re Paxton* for the proposition that mandamus

may be appropriate where "the law [is] governed by well-settled standards." Pet. at

19 (quoting *In re Paxton*, 60 F.4th at 260). But *In re Paxton* itself cautions that a

prudential denial of mandamus is appropriate where a court is asked to review "a

district court's mistaken resolution of a novel or thorny question of law." *In re

Paxton*, 60 F.4th at 260.

The question here—whether to pause a Section 2 case pending *Callais*—is

neither "well-settled" nor governed by a single, uniform rule. Courts have reached

different conclusions. Petitioners point to instances in which courts stayed Section 2

cases pending *Callais* to suggest that denial here is aberrational. Pet. at 4 n.1. But

other courts, including the Fifth Circuit panel that denied a stay in *Nairne*, have declined to stay proceedings. No. 24-30115 (5th Cir. Aug. 25, 2025). If anything, the split in judicial approaches demonstrates exactly the kind of "novel or thorny question" that counsels against mandamus intervention. *In re Paxton*, 60 F.4th at 260.

Moreover, Petitioners fail to show that this issue extends beyond this case in a manner that warrants mandamus. As part of the inquiry into whether a writ is "appropriate under the circumstances," this Court has looked to whether an issue extends "beyond the immediate case." *In re Depuy Orthopaedics*, 870 F.3d at 352. Here, Petitioners' argument is expressly time-limited: they contend the Supreme Court is months away from deciding *Callais* and that the district court should therefore pause this litigation in the interim. Even taking that prediction at face value, it describes a temporary preference about case pacing—not a recurring systemic problem that will continually evade review absent mandamus. A short-term forecast about impending Supreme Court guidance about the viability of *remedy* in a particular Section 2 case does not transform an ordinary stay ruling into an issue of institutional importance warranting extraordinary intervention. If it did, mandamus would become a routine mechanism for halting litigation whenever the Supreme Court granted review in a potentially relevant case. That is not, and has never been, the role of mandamus.

## CONCLUSION

The extraordinary writ of mandamus is not an appropriate response to an ordinary exercise of docket management. This Court should deny the Petition.

Dated: January 15, 2026

Respectfully submitted,

*/s/ Daniel Hessel*

Brenda Wright
Stuart Naifeh
Kathryn Sadasivan
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector Street, Fifth Floor
New York, NY 10006
(212) 965-2200
bwright@naacpldf.org

Deuel Ross
  *Associate Director-Counsel*
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
700 14th Street NW, Suite 600
Washington, DC 20005

Daniel Hessel
ELECTION LAW CLINIC
HARVARD LAW SCHOOL
6 Everett Street, Ste. 4105
Cambridge, MA 02138
(617) 496-0222
dhessel@law.harvard.edu

Joshua Tom
ACLU OF MISSISSIPPI
101 South Congress Street
Jackson, MS 39201
Telephone: (601) 354-3408
jtom@aclu-ms.org

*Counsel for Respondents*

**CERTIFICATE OF SERVICE**

I certify on this 15th day of January, 2026, that I electronically filed this brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF filing system. I further certify that all counsel of record are registered CM/ECF users and that all service will be accomplished by the appellate CM/ECF system.

*/s/ Daniel Hessel*
Daniel Hessel

*Counsel for Respondents*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 21(d)(1), I certify on this 15th day of January, 2026, that this brief complies with the typeface and type style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6). This brief totals 6,351 words and has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14-point font, and all footnotes are in 12-point Times New Roman font.

_/s/ Daniel Hessel_
Daniel Hessel

_Counsel for Respondents_